IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07CV402

| | |
|---|---|
| ELMET TECHNOLOGIES, INC., ) <br> WATAUGA OPPORTUNITIES, INC., ) <br> and COMPLETE DESIGN & PACKAGING, LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> CHRISTOPHER RADKO, a/k/a ) <br> CHRISTOPHER RADKOWSKI, a/k/a ) <br> KRZYSZTOF RADKOWSKI, ) <br> ) <br> Defendant. ) <br> _____) | ORDER |

This matter is before the court upon Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I. FACTUAL BACKGROUND:**

The three Plaintiffs are creditors of Rauch Industries, Inc. ("Rauch"), a company which designs, markets and sells seasonal decor merchandise. In March of 2005, Rauch acquired Starad, Inc. ("Starad"), a company that designed, manufactured and marketed Christmas ornaments. The Defendant, Christopher Radko ("Radko"), is an internationally recognized designer of glass ornaments, and was the sole owner of Starad. The terms of the Stock Purchase Agreement ("SPA") gave Radko more than five percent of Rauch stock, a seat on Rauch's Board of Directors, and made Radko the President of Rauch's Christopher Radko Division. The Radko Division was created by Rauch to conduct the business that it acquired from Radko. Radko also executed an Employment and Non-Competition Agreement in conjunction with the sale of

1

Starad.

According to the Complaint, Radko failed to disclose to Rauch and to the Plaintiffs that he had a series of agreements, trusts and other offshore arrangements through which he indirectly owned and controlled two companies called Northstar Sp. Z.o.o. ("Northstar") and Arkadia Artisans Ltd. ("Arkadia"). Northstar manufactured and supplied 80% of the products produced by the Radko Division of Rauch, and Radko dealt directly with Northstar in determining the price that Rauch would be charged per ornament, as well as the production process, schedule and orders for those ornaments. Arkadia acted as Northstar's agent for receiving payment for the ornaments produced by the Radko Division.

In late 2005 to early 2006, Rauch experienced a significant cash flow crisis that caused it to default under its then-existing payment obligations to the Plaintiffs. In exchange for the Plaintiffs' agreement to forebear their right to exercise collection measures against Rauch, including the filing of an involuntary bankruptcy petition, Rauch offered Plaintiffs repayment terms set forth in Promissory Notes between Rauch and each of the Plaintiffs. In addition, Rauch agreed to allow Carl Miller, Plaintiff Elmet's Vice-President and Chief Financial Officer, to sit and act as its representative on Rauch's Board of Directors. As further assurance to Plaintiffs that Rauch would be able to meet its payment obligations, Rauch provided Plaintiffs with copies of the SPA between Rauch and Starad, Radko's Employment and Non-Competition Agreement, along with Rauch's financial statements and other data, including the revenue/expense projections for the Radko Division. Plaintiffs allege that this information was relied upon to induce them to enter into the Promissory Notes and forbear the exercise of collection measures against Rauch.

In November 2006, Rauch defaulted on its payment obligations under the Promissory Notes, substantially due to the fact that the Radko Division revenue had fallen well short of, and expenses had been greater than, the projections provided to the Plaintiffs prior to the execution of the Promissory Notes. An ensuing investigation revealed that Radko had an undisclosed financial interest in both Northstar and Arkadia, and that Radko had personally benefitted from over 700 Rauch purchases from Northstar, which caused Rauch to incur costs of approximately $5 million in excess of what Rauch would have paid in the absence of Radko's self-dealing.[1]

The Plaintiffs have alleged claims against Radko for fraud, breach of fiduciary duty, negligent misrepresentation, constructive fraud, and unfair trade practices. Radko has moved to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

**II. DISCUSSION:**

In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the allegations in a plaintiff's complaint are presumed true and all reasonable factual inferences must be construed in plaintiff's favor. Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). However, the court need not accept legal conclusions drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.

---

[1] Alleging the same facts, Rauch has sued Radko for breach of contract, breach of fiduciary duty, constructive fraud, fraud/fraudulent representation, unfair trade practices, negligent misrepresentation, unjust enrichment, and constructive trust. That case is also pending before this court (3:07CV197-MU).

Twombly, 127 S.Ct. 1955, 1974 (2007).

Plaintiffs assert, *inter alia*, that Radko owed them a fiduciary duty and Radko's breach of that duty caused Rauch to default on the Promissory Notes. Radko contends that Plaintiffs' breach of fiduciary duty claim must be dismissed pursuant to Rule 12(b)(6), because any duties owed by Radko were owed to Rauch, not to Rauch's creditors. See Underwood v. Stafford, 270 N.C. 700, 702, 155 S.E.2d 211, 213 (N.C. 1967). In general, directors do not owe a fiduciary duty to creditors of a corporation, except where circumstances exist "amounting to a 'winding-up' or dissolution of the corporation." Whitley v. Carolina Clinic, Inc., 118 N.C.App. 523, 526-8, 455 S.E.2d 896, 899-900 (1995).

Plaintiffs attempt to circumvent this general rule by arguing that because Mr. Carl Miller, Elmet's CEO, was also a member of the board of directors, Radko had an affirmative duty to disclose certain information to the Plaintiffs. Plaintiffs cite Lazenby v. Godwin, 40 N.C.App. 487, 253 S.E.2d 489 (1979), in support of their position. In Lazenby, however, the North Carolina Court of Appeals noted that North Carolina law generally does not recognize that board members are fiduciaries of one another unless "special circumstances are present." Lazenby, 40 N.C.App. at 494, 253 S.E.2d at 492. The "special circumstances" warranting the finding of a fiduciary relationship between the co-directors in the Lazenby case were that the directors were also shareholders in a closely-held family corporation and one director attempted to acquire the stock of his co-director. Id., 253 S.E.2d at 493. Moreover, in Stone v. McClam, the North Carolina Court of Appeals recognized that the "special relationship" in Lazenby arose not because the parties were co-directors, but because the Lazenbys were stockholders. Stone v. McClam, 42 N.C.App. 393, 402, 257 S.E.2d 78, 84 (1979). The "special circumstances" existing

4

in the Lazenby case are simply not present here. Mr. Miller's status as a Rauch director does not create a fiduciary duty from Radko to the Plaintiff creditors.

North Carolina courts limit a director's liability to a creditor for fraud, negligent misrepresentation, constructive fraud, and unfair and deceptive trade practices to situations in which the director actually participates in the transaction on which the claims are based. Oberlin Capital v. Slavin, 147 N.C.App. 52, 554 S.E.2d 840 (2001). In Oberlin, the plaintiff Oberlin Capital entered into a loan and security agreement with Express Parts Warehouse, Inc. Id. at 55, 554 S.E.2d at 843. Negotiations on behalf of Express Parts were conducted exclusively by Edward Slavin, the president and a director of Express Parts. Id. Slavin and the other members of the board of directors failed to disclose to Oberlin that one of Express Parts' suppliers was in material breach of its supply contract and that the breach had a material negative impact on Express Parts' financial condition. Id. at 55, 554 S.E.2d at 844. Express Parts ultimately filed a petition for bankruptcy. Id. Oberlin sued the individual directors and Slavin for fraudulent concealment, negligence, negligent misrepresentation, breach of fiduciary duty, and unfair and deceptive trade practices. Id.

The defendants moved to dismiss pursuant to Rule 12(b)(6). Id. The trial court dismissed all claims against the members of the board of directors who did not participate in the negotiation of the Oberlin loan, as well as several claims against Slavin, who had participated in the negotiations, but did not dismiss the claim against Slavin for fraudulent concealment. Id. The North Carolina Court of Appeals affirmed the dismissal of Oberlin's claims against the board members, holding that Oberlin had failed to sufficiently allege any wrongful action on the part of these defendants. Id. at 57, 554 S.E.2d at 845. The complaint simply alleged that "all of the

directors of Express Parts actively and personally participated in the decision to conceal, fail to disclose and otherwise hide" the facts regarding the supplier's breach. Id. The court stated that the complaint failed to "clarify how and to what extent these defendants actively and personally participated in the alleged wrongdoing." Id. With regard to the claims against Slavin, the court noted that unlike the other directors, the complaint attributed specific individual actions to Slavin, namely that he was actively involved in the negotiations and signed the loan agreement having knowingly failed to disclose the information about the supplier breach. Id. at 58, 554 S.E.2d at 845. The court concluded that the complaint sufficiently alleged Slavin's personal participation in the alleged wrong. Id. Although the court held that a director or officer who directly participates in the negotiation and execution of loan documents with a creditor does owe a duty to that creditor, the court dismissed the remaining fraudulent concealment claim against Slavin, holding that in a nondisclosure case, the complaint must allege that the creditor was denied the opportunity to investigate or that it could not have learned the true facts by exercise of reasonable diligence. Id. at 59, 554 S.E.2d at 846. The Oberlin complaint made no such allegations. Id. at 60, 554 S.E.2d at 847.

Nowhere does the Complaint herein allege that Radko was personally involved in the negotiation of the loan agreements with the Plaintiffs. The Complaint merely alleges that "[t]hrough the SPA, Employment Agreement, other representations made during the negotiations leading to the execution of the promissory notes, and otherwise, Mr. Radko made, caused to be made, and/or authorized the making of, representations to Plaintiffs to the effect that [*inter alia*] . . . he was not engaged in any other business other than in connection with his duties for Starad." (Complaint, ¶ 26). Like the complaint in Oberlin, the Complaint herein fails to clarify how and

to what extent Radko actively and personally participated in the alleged wrongdoing.  Moreover, the Complaint further fails to allege that the Plaintiffs were denied the opportunity to investigate or that they could not have learned the true facts by exercise of reasonable diligence.

Finally, Plaintiffs attempt to impose a duty of care on Radko under <u>Raritan River Steel Co. v. Cherry, Bekaert & Holland</u>, 322 N.C. 200, 367 S.E.2d 609 (1988).  In that case, creditors of a certain corporation sued the corporation's accountants, alleging that they had negligently prepared audits overstating the corporation's net worth, and the creditors had relied on those audits to their detriment.  However, <u>Raritan</u> is easily distinguishable from the facts as alleged in this case.  Unlike in <u>Raritan</u>, nowhere is it alleged herein that Radko was an accountant or financial professional or that he was specifically hired to provide or supply analytical information or reports.  Furthermore, there are no allegations that Radko even prepared the documents supplied to the Plaintiffs by Rauch.  Because North Carolina courts have not extended protection to creditors under the facts as alleged in the Complaint, Plaintiffs' claim for negligent misrepresentation must be dismissed.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss is hereby GRANTED.

Signed: May 13, 2008

Graham C. Mullen
United States District Judge